ROBERT B. REILLY, SR., CONSERVATOR (ESTATE OF ROBERT B. REILLY, JR.) *v.* CARL DIBIANCO, SR., ET AL.
(3150)
(3156)

DUPONT, C. J., HULL and BORDEN, Js.

Argued October 4, 1985—decision released March 25, 1986

*Paul E. Pollock,* for the appellant-appellee (named defendant).

*David M. Reilly,* pro se, the appellee-appellant (substituted plaintiff).

*Roger J. Frechette,* for the appellee (defendant Carl DiBianco, Jr.)

DUPONT, C. J. This case, tried to a jury, is a personal injury action in which the plaintiff sought damages for an assault and battery committed by Carl DiBianco, Jr., and Hector Sein, both alleged by the plaintiff to be employees of Carl DiBianco, Sr.[1] The complaint also

---

[1] The suit was originally brought by the conservator of the estate of Robert Reilly, Jr. Subsequent to the trial, Robert Reilly, Jr., died and the administrator of his estate was substituted as the plaintiff. The plaintiff and the defendant Carl DiBianco, Sr., have both appealed. Neither of the employee defendants, Hector Sein and Carl DiBianco, Jr., have appealed. The word plaintiff, as used in this decision, refers to the decedent, unless otherwise specified.

alleges that DiBianco, Jr., while acting within the scope, course or authority of his employment, initiated an assault on the plaintiff in which Sein assisted, at the urging and instigation of DiBianco, Jr. Other allegations are that DiBianco, Sr., is vicariously liable for the acts of DiBianco, Jr., and Sein, and that, as a proximate result of a beating, kicking and stabbing, the plaintiff was rendered comatose and suffered permanent brain damage.

The jury returned verdicts in favor of the plaintiff against all three defendants in the total amount of $2,000,000, and returned a verdict of $2,000,000 against DiBianco, Sr., and verdicts of $1,000,000 each against DiBianco, Jr., and Sein.

These verdicts were returned following prior verdicts which were not accepted by the court because they were inconsistent.[2] Interrogatories were then prepared by the court[3] and submitted to the jury with oral instruc-

[2] The first verdicts were that the jury found the issues in favor of the plaintiff against all three defendants in the amount of $2,000,000, and further found that the plaintiff should recover $1,000,000 of DiBianco, Sr., and $500,000 each of DiBianco, Jr., and Sein.

[3] The interrogatories, the answers thereto, and the instructions were as follows:

"1. Was the conduct of Carl DiBianco, Jr., such as to render him legally liable to the plaintiff?

"A: Yes.

"2. If the answer to Interrogatory #1 is yes, was Carl DiBianco, Jr., acting in the furtherance of the interests of the business of Carl DiBianco, Sr., and within the scope of his employment?

"A: Yes.

"3. Was Hector Sein an employee of defendant Carl DiBianco, Sr., at the time of the events referred to in the complaint?

"A: Yes.

"4. Was the conduct of Hector Sein such as to render him legally liable to the plaintiff?

"A: Yes.

"5. If answer to Interrogatory #4 is yes, was Hector Sein acting in furtherance of the interests of the business of Carl DiBianco, Sr., and within the scope of his employment?

"A: Yes.

"6. What are total damages due to the plaintiff?

tions to first answer the interrogatories, and then to use whichever one of seven verdict forms[4] they deemed appropriate.

DiBianco, Sr., and DiBianco, Jr., both moved to set aside the verdicts for judgments notwithstanding the verdict and for remittiturs. The trial court denied the motion of DiBianco, Sr., to set aside the verdict, as to him, insofar as it encompassed liability for the acts of Sein, but granted it as to his liability for the acts of DiBianco, Jr., set the verdict against him aside as to damages only, and ordered a new trial, limited to the issue of damages. It denied DiBianco, Sr.'s motions for judgment and for remittitur. The court granted DiBianco, Jr.'s motion to set aside the verdict as to the issue of damages only, ordered a new trial limited to the issue of damages, and denied his other motions.

"A: Two Million Dollars.

"7. Is Carl DiBianco, Jr., legally liable for all damages due the plaintiff?
"A: No.

"8. If answer to Interrogatory #7 is no, then specify damages for which Carl DiBianco, Jr., is liable.
"A: One Million Dollars.

"9. Is Hector Sein legally liable for all damages due the plaintiff?
"A: No.

"10. If answer to Interrogatory #9 is no, then specify damages for which Hector Sein is liable.
"A: One Million Dollars.

"11. What is the amount of damages, if any, for which Carl DiBianco, Sr., is legally liable to the plaintiff?
"A: Two Million Dollars.

"Instructions: (1) the amount specified in #8 and #10 should total amount specified in #6. (2) The amount specified in #11 may not exceed amount specified in #6. It may be the amount specified in #8 or #10 or a total of both, or to the amount to which #7 refers or to the amount to which #9 refers."

[4] The seven verdict forms provided the jury with the alternatives of finding that the plaintiff should recover (1) against all three defendants, or (2) against DiBianco, Jr., or (3) against Sein, or (4) against DiBianco, Jr., and Sein, or (5) against DiBianco, Sr., and Sein, or (6) against DiBianco, Sr., and DiBianco, Jr., or (7) of finding in favor of all three defendants. These forms were available to the jury both before and after the first verdicts.

DiBianco, Sr., has appealed from the judgment of the court, claiming that the court erred (1) in admitting into evidence a written statement of Sein given to the New Haven police department, (2) in failing to render judgment notwithstanding the verdicts because there was insufficient evidence to hold him vicariously liable for the actions of DiBianco, Jr., or Sein, and because the jury could not apportion damages between joint tortfeasors, and (3) in charging the jury concerning future medical bills when there was insufficient evidence to prove their amount. The plaintiff has appealed, primarily claiming that the trial court erred (1) in setting aside, in part, the verdicts as to DiBianco, Jr., and DiBianco, Sr., and (2) in failing to conclude that any error in the apportionment of damages between DiBianco, Jr., and Sein affected the verdicts against both, and affected his right to recover full damages as assessed by the jury. The claims of error of the plaintiff are intertwined with the second claim of error of DiBianco, Sr., and are discussed together with that claim of DiBianco, Sr.[5]

In its memorandum of decision relating to the posttrial motions of DiBianco, Sr., and DiBianco, Jr., the court stated that there was evidence from which the jury could find that both assailants of the plaintiff were employees of DiBianco, Sr., and it reviewed some of the facts which were before the jury.

DiBianco, Sr., owned and operated a gasoline service station on which premises a checkbook used in connection with the business was located. On the date of the assault, DiBianco, Sr., had left DiBianco, Jr., in charge of the business. DiBianco, Jr., told Sein that the plaintiff had stolen the checkbook and they went to the bank which issued the checkbook to look for the plain-

---

[5] Thus, the judgment against DiBianco, Sr., is before us by virtue of his appeal. The judgment ordering a new trial as to DiBianco, Sr., and DiBianco, Jr., are before us by virtue of the plaintiff's appeal. The judgment against Sein is not before us because neither he nor the plaintiff appealed from it.

tiff. Not finding him there, they returned to the station. Shortly thereafter, the plaintiff appeared and was confronted by DiBianco, Jr., with the alleged theft. The plaintiff denied stealing the checkbook and DiBianco, Jr., then punched and kicked him. At the time, DiBianco, Sr., was present, and told his son to stop fighting. Sein subsequently told the police that he worked at the station and became involved in the fight between DiBianco, Jr., and the plaintiff to protect the interest of the station at which he worked, and that he alone had stabbed the plaintiff.[6]

Other facts which the jury could reasonably have found were that the plaintiff was knocked to the ground by DiBianco, Jr., was repeatedly kicked and punched by both him and Sein,[7] was kicked by DiBianco, Jr., while DiBianco, Jr., was wearing workboots, was punched in the mouth by DiBianco, Jr., causing a large amount of blood on the plaintiff's face, and eventually staggered into a street adjacent to the station where he collapsed. The jury also had evidence that on occasion Sein pumped gas for DiBianco, Sr., and received payment from him from time to time, and that the latter kept no books or receipts for his business, had no cash register, and did not pay any person, including his son, a regular salary. A trail of blood ran from the vicinity of the gas pumps on the station premises to the street where the plaintiff eventually collapsed. A police officer testified that DiBianco, Sr., stated that his son was responsible for the assault on the person in the street. DiBianco, Sr., just prior to the arrival of the police, told his son to go home and take a shower. When DiBianco, Jr., arrived home he did not tell his mother and sister anything because he "didn't want

---

[6] This statement was contained in a written statement given to the police by Sein and is the subject of DiBianco, Sr.'s first claim of error, discussed hereinafter. DiBianco, Jr., was asked during his trial testimony if he had stabbed the plaintiff, and answered "I doubt it."

[7] See footnote 6, supra.

to upset them." The plaintiff suffered a penetrating stab wound to his left chest which lacerated his heart. The plaintiff's chest was opened and his heart was sutured. He never regained consciousness, and at the time of the trial was a quadriplegic and in a permanent coma.

## I

The first claim of error of DiBianco, Sr., is that the court should not have admitted into evidence a written statement of Sein given to the police. The statement was given approximately two and one-half weeks after the alleged assault on the plaintiff, and was sworn to, by him, before a police officer. The statement was voluntary and was preceded by warnings of *Miranda* rights which were waived in writing by Sein. See *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Sein initialled the waiver of each of his rights and acknowledged, in writing, that the statement could be used against him. During the question and answer format of the statement, he stated that he had consumed two short beers before coming to the police station to make the statement, felt good enough to make a statement, and had graduated from high school while in the military service. He further stated that the plaintiff had stolen a checkbook "from the garage where I work," and that he had accompanied DiBianco, Jr., to a bank to see if the plaintiff was there cashing any checks. About five minutes after returning from the bank, the plaintiff arrived at the garage and was questioned about the checkbook by DiBianco, Jr., who then began hitting the plaintiff. "[W]hen I noticed the struggle going on I jumped in and started hitting him. During the struggle we were on the ground and I started hitting him and seen him reaching for his knife and grabbed it before he did in fear that he would use it on Junior or myself and I used it on him during the fight . . . ." He also stated that he became

involved in the struggle "[b]ecause I do work at the garage and I do have to protect the interest of the garage also." He also stated that he came to the station because "Junior's mother worries a lot and she feels that Junior was responsible for the whole thing of which he was not . . ." and that he had consulted with a lawyer prior to giving the statement.

The statement was introduced as evidence against all three defendants as a declaration against penal interest. Such statements are admissible if they are trustworthy. *Chambers* v. *Mississippi,* 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). Courts have concluded that the test for admissibility as formulated in *Chambers* requires a consideration of when the declaration was made and to whom, the existence of corroborating evidence, whether it is, in fact, against penal interest, and the unavailability of the declarant as a witness. *State* v. *Frye,* 182 Conn. 476, 479, 438 A.2d 735 (1980).

The threshold requirement is the unavailability of the declarant. *State* v. *DeFreitas,* 179 Conn. 431, 440–41, 426 A.2d 799 (1980). Here, during the trial, the witness claimed the protection of the fifth amendment to the United States constitution and refused to answer whether he recalled the statement, and then stated that he could not recall it because he was intoxicated at the time. He would not answer if he was working at the garage on the date of the assault, and refused to answer the questions of whether all of his statements to the police were untrue, or whether he had taken any action to protect the station's checkbook.

Sein was physically present in court but was functionally unavailable because of his exercise of a testimonial privilege.[8] His testimony on crucial issues was

---

[8] Common forms of unavailability are listed in rule 804 (a) of the Federal Rules of Evidence. Fed. R. Evid. 804. Among them is the situation where the court has ruled that the defendant has a testimonial privilege.

unavailable. Sein was both a witness and one of three defendants in a civil action. He was questioned and refused to answer material questions. Although in court statements are capable of being tested by cross-examination and are, therefore, preferred to the use of out-of-court statements against penal interest which are not so subject, when that testing is precluded by the constitutional recalcitrance of a witness, there exists no good reason to exclude such out-of-court statements for use against all defendants, whether in a civil or criminal case, if those statements are trustworthy as defined in *Chambers*.

Sein's statement against penal interest was made under oath, voluntarily, with knowledge of the waiver of his constitutional rights, shortly after the events which were the subject of the statement, and corroborating evidence existed as to the statement. The trial court did not abuse its discretion in admitting the statement. The hallmark of such a statement is its trustworthiness, and here that quality was substantial. See *State* v. *Gold*, 180 Conn. 619, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980).

## II

The charge to the jury, the interrogatories prepared by the court, and the court's reasons for its actions on the postverdict motions are inextricably tied to those claims of errors of the parties which relate to the partial setting aside of the verdicts for the plaintiff against DiBianco, Sr., and DiBianco, Jr.

The charge to the jury gave the jury three alternatives, once it had determined that both DiBianco, Jr., and Sein were responsible for the injury to the plaintiff. They could have found that the two acted in concert in pursuance of a common purpose, with mutual aid in carrying it out, to produce the ultimate injury

to the plaintiff, thus making each responsible for all of the damages incurred by the plaintiff because the legal liability for the acts of one could not be severed from the acts of the other. They could have found that the acts of each were concurrent, independent acts, committed in pursuance of a common goal, and capable of monetary separation or apportionment of damages between them. Lastly, they could have found that each acted independently of the other in two disparate incidents, one incident being totally unrelated to the other, with each actor causing separate and distinct injuries capable of monetary separation.

The court concluded that the jury intended to isolate the involvement of DiBianco, Jr., and Sein, because the answers to the interrogatories stated that neither was legally responsible for all of the damages due the plaintiff. This conclusion was obviously correct. The court then concluded, because of the jury's isolation of the legal responsibility of each for damages, that the jury had also found that DiBianco, Jr., and Sein had acted in two separate incidents to cause two separate harms. This conclusion was not warranted since the jury could also have found that the acts of each were concurrent and independent, in combination being the proximate cause of the plaintiff's injury, but that the total damages due the plaintiff were capable of apportionment between them.

Having concluded as it did, the court then set aside the verdict as to DiBianco, Jr., on the reasoning that he had punched and kicked the plaintiff but was not the actor in the stabbing which was the direct cause of the plaintiff's condition. The court therefore found that the award as to DiBianco, Jr., was grossly excessive, and disproportionate to any injury inflicted by him, and ordered a new trial as to damages only. The court set aside the verdict as to DiBianco, Sr., as to damages only because his liability for the acts of DiBianco, Jr.,

was vicarious. The court denied DiBianco, Sr.'s motion for remittitur, because, until a second trial can establish the amount of damages which DiBianco, Jr., should pay to the plaintiff, it cannot be known by what amount the verdict against DiBianco, Sr., should be reduced.

This case contains extremely complex issues in a recently expanding area of law. This is the first appellate case in which a trial court had actually to apply the infrequently stated principle in this state that where the tortious intentional conduct of two or more persons combines to bring about harm to a plaintiff and one of the actors seeks to limit his liability because the harm is capable of apportionment between or among them, the burden of proof as to such apportionment is upon that actor. *Gutowski* v. *New Britain,* 165 Conn. 50, 327 A.2d 552 (1973); 2 Restatement (Second), Torts § 433 (B) (2). If there is a basis upon which a jury can apportion damages between and among joint tortfeasors who have committed concurrent but independent acts which are the proximate cause of one harm, there is no logical reason to prevent the jury from doing so. Prosser, Torts (4th Ed.) § 52, pp. 313–14.

As stated previously, the court's charge allowed the jury to find that DiBianco, Jr., and Sein were acting in concert, that is together, pursuant to a common plan, mutually aiding each other to produce one assault, making each responsible for all of the damages, regardless of the degree of participation of either. See *Lamb* v. *Peck,* 183 Conn. 470, 441 A.2d 14 (1981); *Gervais* v. *Foehrenbach,* 149 Conn. 461, 181 A.2d 253 (1962). Had this been the jury's finding it would have stated that each was responsible for all of the damages incurred by the plaintiff in answer to the interrogatories and the verdict against each would have been $2,000,000. It is clear that the jury did not so find.

The jury could also have found that DiBianco, Jr., and Sein acted independently of each other in two separate incidents, causing two separate harms to the plaintiff, with each being liable only for the harm caused by him; see *Grzybowski* v. *Connecticut Co.,* 116 Conn. 292, 294, 164 A. 632 (1933); or it could have found that their concurrent, independent acts were the proximate cause of a single injury, capable of monetary apportionment between them, if the defendants sustained their burden of proving a limitation on liability. *Gutowski* v. *New Britain,* supra. The interrogatories did not ask questions sufficient to determine which finding the jury made.

*Gutowski* and the Restatement (Second) of Torts, which it follows, state an exception to the common law doctrine of joint and several liability between and among joint tortfeasors, and to the common law corollary that there is no contribution between and among joint tortfeasors. "The rule that there cannot be contribution between joint tort-feasors is subject to definite limitations." *Preferred Accident Ins. Co.* v. *Musante, Berman & Steinberg Co.,* 133 Conn. 536, 541, 52 A.2d 862 (1947). The *Gutowski* principle is limited to those rare cases where the independent acts of two or more persons combine to bring about one injury *and* one of the actors seeks to isolate his monetary liability by proving the damages arising from his particular involvement in the harm to a plaintiff. Ordinarily, if two or more persons unite by concerted, or independent, intentional tortious acts to cause one injury, each is liable for the whole injury and damages may not be apportioned among them. *Lamb* v. *Peck,* supra.

In *Gutowski,* two police officers used concurrent force to assault the plaintiff. One hit the plaintiff on the left side of the face, the other twisted his right arm and hit him on the right shoulder. One hit the plaintiff while the other held him and the injuries were inflicted at

different times and places in the police station. The trial court concluded that the officers were acting concurrently, were joint tortfeasors and were jointly and severally liable, that the plaintiff did not have to prove how much of his injury was inflicted by each, but that the defendants could seek to apportion the total damages between them if they sustained their burden of proof as to the apportionment.

The ability of one tortfeasor to obtain payment from another tortfeasor, that is, contribution, usually arises after a judgment in an underlying tort action has been satisfied, in whole or in part, in an amount disproportionate to the harm caused by the tortfeasor who satisfied the judgment. See *Fidelity & Casualty Co.* v. *Jacob Ruppert, Inc.,* 135 Conn. 307, 63 A.2d 849 (1949); *Preferred Accident Ins. Co.* v. *Musante, Berman & Steinberg Co.,* supra. Contribution was originally denied between and among intentional wrongdoers, and subsequently the rule of no contribution among intentional tortfeasors was expanded to negligent tortfeasors. See note, "Does Connecticut Comparative Negligence Statute Abrogate Common Law No-Contribution Rule?," 10 Conn. L. Rev. 526 (1978). Although most actions for contribution arise after the underlying action has concluded, leaving the plaintiff with his verdict and payment of it intact, there is nothing conceptually irrational about *Gutowski.* If all of the defendants are parties in an underlying action of a plaintiff, each defendant may establish that portion of the plaintiff's judgment, if any, for which each is liable, if the harm is capable of division between and among them because each defendant has engaged in independent acts of harm.

Connecticut has not, by statute, abolished the rule of no contribution between and among joint tortfeasors, but, by judicial decision, has allowed a variation of that theme, apportionment, when it is capable of being proved. *Gutowski* v. *New Britain,* supra.

In many states, the advent of allowing a trier to assess comparative negligence between a plaintiff and a defendant has bred the related doctrine of assessing comparative negligence among joint tortfeasors. The latter doctrine abrogates the rule of no contribution among joint tortfeasors to the extent that it interferes with the plaintiff's right to collect his entire damages from only one of the tortfeasors or affects the legal ability of one tortfeasor to obtain reimbursement from another tortfeasor for damages paid to a plaintiff. Some states, by statute, have allowed apportionment among negligent tortfeasors. See 53 A.L.R.3d 184, 190; 46 A.L.R.3d 801; 8 A.L.R.3d 722. Others have done so by judicial decision, and have allowed contribution among joint tortfeasors in proportion to the percentage of causal negligence of each joint tortfeasor. See *Ladwig* v. *Ermanco Inc.,* 504 F. Sup. 1229 (E.D. Wis. 1981).

Even where such contribution is allowed, however, a passive defendant, liable only vicariously, is not involved in the apportionment or allocation, and remains liable for the whole, insofar as he stands in the shoes of the particular tortfeasor or tortfeasors. See id.

Nothing in *Gutowski* implies that the plaintiff is limited in his rights to obtain the whole amount of the damages from one vicariously liable for all of the damages. Here, the jury, before assessing damages against any defendant, stated, by its answer to one of the interrogatories, that the plaintiff was entitled to damages of $2,000,000. The verdicts against the other defendants cannot interfere with the right of the plaintiff to collect $2,000,000 from DiBianco, Sr., because, if we assume that the jury could have properly found him vicariously liable for the assaults of the other two defendants, he would remain vicariously liable for the whole, no matter how the damages were apportioned between DiBianco, Jr., and Sein.

Cases from other jurisdictions, based on facts similar to this case, albeit sometimes pursuant to statutes, generally hold that apportionment between defendants should be allowed when the damages are capable of being apportioned. This allocation of responsibility among active independent wrongdoers leaves the total responsibility owed to the plaintiff intact, and in no way deprives the plaintiff of the opportunity for, and the benefit of a damages award equal to the entire damage sustained by him. See *Safeway Stores, Inc.* v. *Nest-Kart,* 21 Cal. 3d 322, 579 P.2d 441, 146 Cal. Rptr. 550 (1978); *Lincenberg* v. *Issen,* 318 So. 2d 386 (Fla. 1975); *Tolbert* v. *Gerber Industries, Inc.,* 255 N.W.2d 362 (Minn. 1977); *Rogers* v. *Dorchester Associates,* 32 N.Y.2d 553, 300 N.E.2d 403, 347 N.Y.S.2d 22 (1973); *Dole* v. *Dow Chemical Co.,* 30 N.Y.2d 143, 282 N.E.2d 288, 331 N.Y.S.2d 382 (1972); *Embrey* v. *Borough of West Mifflin,* 257 Pa. Super. 168, 390 A.2d 765 (1978).

Apportionment is really a separate cause of action of the defendants, tried in the primary case for the benefit of the defendants but which may operate to the detriment of the plaintiff in that, although the total award of damages remains fixed, payment from each defendant may only be obtained in the amount of the damages attributable to each defendant.[9]

---

[9] The verdicts here awarded separate recoveries against three defendants. The judgment pursuant to the verdicts would conclude all of the rights of the parties, including the right of the plaintiff to collect the whole of the damages from either active defendant, as well as the rights of DiBianco, Jr., and Sein to obtain contribution from each other. *Cox* v. *Cooper,* 510 S.W.2d 530 (Ky. 1974).

If liability is apportioned, the action becomes like any other civil action in which two defendants are sued in one action and found liable for different amounts. Subsequent suits for contribution would be redundant, because the amount of liability of each is already established. In effect, "contribution" has occurred within the primary case. When apportionment is not obtained, a judgment against joint tortfeasors establishes their liability to the plaintiff for the entire amount of the damages but does not adjudicate their responsibility between and among themselves to pay the judgment. *Preferred Accident Ins. Co.* v. *Musante, Berman & Steinberg Co.,* 133 Conn. 536, 52 A.2d 862 (1947).

The new trial ordered by the court to ascertain the damages due by DiBianco, Jr., would be an unusual proceeding. It could not affect the damages owed by Sein since no new trial was ordered as to him. In effect, the new trial would be a reassessment of how to apportion the damages between two joint tortfeasors because the issue will be the degree of fault of DiBianco, Jr. It would be a trial to determine the amount of damages which one of two joint tortfeasors should pay the plaintiff, without the presence of the other joint tortfeasor.

Damages may not be apportioned between an employer and an employee because the employer and the employee are not joint tortfeasors and the employer is vicariously liable for all of the harm caused by the employee because of public policy reasons. See *Stulginski* v. *Cizauskas*, 125 Conn. 293, 5 A.2d 10 (1939); *Estate of Canale* v. *Binghamton Amusement Co.*, 45 App. Div. 2d 424, 427, 357 N.Y.S.2d 931 (1974), aff'd, 37 N.Y.2d 875, 340 N.E.2d 729, 378 N.Y.S.2d 362 (1975).

The jury found all three defendants liable here, and found the total damages to be $2,000,000. Its verdict against the employer, DiBianco, Sr., for the acts of his employees, was $2,000,000. By finding the damages excessive as to DiBianco, Jr., while simultaneously finding that the total damages were not excessive and in leaving undisturbed the verdict of $1,000,000 against Sein, the court, in effect, has apportioned damages between the employer and his employees.

As previously discussed, the jury's verdicts are capable of two interpretations. The jury either concluded that the two tortfeasors had acted independently, but in combination with each other, to produce one injury, and apportioned or limited the damages of each to one half of the total damages, or they concluded that each had engaged in two independent acts, in two separate incidents, each incident unrelated to the other incident,

and assessed the damages arising from each incident in equal amounts. The latter finding is less likely, however, because this is not the usual case of independent incidents where joint tortfeasors, previously unknown to each other, happen, by circumstance of time and place, to cause harm to another by independent tortious acts. *Grzybowski* v. *Connecticut Co.,* supra. If such a finding were the only possible interpretation of the jury's verdicts, the court would have been correct in setting the verdicts against him and DiBianco, Sr., aside as to damages, because no evidence was produced that DiBianco, Jr., had stabbed the plaintiff. It would then, however, have had to set aside the verdict against Sein also, because if the total damages were intended by the jury to be $2,000,000, the verdict against Sein could not stand once the verdict against DiBianco, Jr., was set aside as excessive. If $2,000,000 is the total damages awarded by the jury, and $1,000,000 is the verdict against one defendant, and $1,000,000 is excessive as to the other, obviously $2,000,000 can no longer be the total.

In this case, however, the jury could have reasonably concluded that each active tortfeasor acted independently and concurrently to produce one injury, and then concluded that the liability of each should be limited in accordance with the court's instructions which were based on *Gutowski.*

The court did not find the total assessment of damages to be excessive nor was the jury told to limit its apportionment of damages to any particular percentage of the whole or to apportion damages in disparate amounts.

The evidence was that the direct cause of the plaintiff's primary injury, the laceration to his heart, was caused by the stabbing by Sein. The jury, however, could have believed the Sein version of events which

was that he joined DiBianco, Jr., to compound the assault while the latter was punching and kicking the plaintiff. The jury could have believed that the plaintiff, weakened by the facial blows and kickings inflicted by DiBianco, Jr., was unable to defend himself from Sein's assault with a knife. Their concurrent, but independent, acts could have been found by the jury to be the proximate cause of the ultimate, lethal injury.

A court, on a motion to set aside a verdict, should review the evidence in the manner most favorable to sustaining the verdict. *Bielaska* v. *Waterford,* 196 Conn. 151, 491 A.2d 1071 (1985); *State* v. *Marsala,* 1 Conn. App. 647, 651, 474 A.2d 488 (1984). Since the verdicts were capable of being sustained as to the damages, and were not inconsistent, it was error for the court to have set them aside.

## III

The defendant, DiBianco, Sr., also claims as error the trial court's denial of his motion to render judgment for him notwithstanding the verdicts because the evidence was insufficient to establish his vicarious liability as the employer of Sein and DiBianco, Jr. DiBianco, Sr., admitted in his answer to the plaintiff's complaint that DiBianco, Jr., was his employee.

An employer is responsible for the wilful torts of his employee, committed within the scope of his employment, and in furtherance of the employer's business. These are questions of fact to be determined by the jury. *Pelletier* v. *Bilbiles,* 154 Conn. 544, 227 A.2d 251 (1967). There was evidence from which the jury could find that DiBianco, Jr., was in charge of the gas station for a portion of the day on which the events of the case occurred, that DiBianco, Jr., attempted to retrieve a business checkbook which he believed the plaintiff had stolen, that the assault occurred, or at least began, on the premises of the business, that the employer was

present at the time, and that the assault was committed in defense of the employer's property. The jury could reasonably have found that DiBianco, Jr., engaged in the assault within the scope of his employment and in furtherance of DiBianco, Sr.'s business.

There was evidence from which the jury could conclude that Sein was an employee of DiBianco, Sr., Sein's own statement was that the plaintiff had stolen a "checkbook from the garage where I work," and that he became involved in the physical struggle between the plaintiff and DiBianco, Jr., "[b]ecause I do work at the garage and I do have to protect the interest of the garage also." There was testimony that Sein pumped gas at the station and was paid money for doing so, that he went to the station every other day for four years, and that he was asked by DiBianco, Jr., while the latter was in charge of the station, to accompany him in an attempt to find the plaintiff and the missing checkbook. The trial court was correct in concluding that the jury had evidence from which it could have found that Sein was in the employ of DiBianco, Sr., and committed the assault within the scope of his employment and in furtherance of the employer's business.

## IV

The final claim of error of DiBianco, Sr., is that the charge to the jury regarding future medical expenses was improper because there was insufficient evidence presented on this issue. In its charge to the jury, the trial court stated that the medical expenses incurred by the plaintiff up to the date of trial and those further expenses likely to be incurred in the future could be included in the jury's determination of damages. The court also reminded the jury of the amount of medical expenses incurred to the date of the trial and of the plaintiff's life expectancy. Both of these facts were in evidence and were undisputed.

In awarding future medical expenses, a jury's determination must be based upon an estimate of reasonable probabilities, not possibilities. *Jerz* v. *Humphrey,* 160 Conn. 219, 224, 276 A.2d 884 (1971). Such evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. See *Healy* v. *White,* 173 Conn. 438, 442, 378 A.2d 540 (1977); *Nash* v. *Hunt,* 166 Conn. 418, 428, 352 A.2d 773 (1974); *Hanauer* v. *Coscia,* 157 Conn. 49, 53, 244 A.2d 611 (1968). Here, evidence was presented regarding the nature and extent of the plaintiff's injuries, including evidence that the plaintiff's coma was irreversible. "Speaking broadly, the jury had the opportunity to appraise his condition and the probable future consequences of it." *Boland* v. *Vanderbilt,* 140 Conn. 520, 523, 102 A.2d 362 (1953). Furthermore, even if there were no medical testimony expressly substantiating the permanency of the plaintiff's injuries, a trier of fact can conclude, by inference, that an injury will be permanent. See *Robinson* v. *ITT Continental Baking Co.,* 2 Conn. App. 308, 313, 478 A.2d 265 (1984). It defies common sense to state that an irreversible coma is not permanent. Under the circumstances, both the instruction to the jury with regard to future medical expenses and the evidence presented on the issue were sufficient for the jury to assess damages should it find liability.

There is error in part, the judgment is set aside insofar as it ordered new trials on the issue of damages as to Carl DiBianco, Sr., and Carl DiBianco, Jr., and the case is remanded with direction to reinstate the verdicts, and to render judgment in favor of the plaintiff against the defendant, Carl DiBianco, Sr., in the amount of $2,000,000, and against the defendant, Carl DiBianco, Jr., in the amount of $1,000,000.

In this opinion the other judges concurred.