**UNITED STATES of America**

**v.**

**YALE NEW HAVEN HOSPITAL, et al.**

**Civ. No. N–89–469 (PCD).**

United States District Court,
D. Connecticut.

Jan. 5, 1990.

---

Colette J. Winston, U.S. Dept. of Justice, Washington, D.C., for U.S.

Jon S. Berk, Gordon, Muir & Foley, Hartford, Conn., for Yale New Haven Hosp.

Madonna A. Sacco, Bai, Pollock & Dunnigan, Bridgeport, Conn., for Ohmeda.

## RULING ON MOTION TO DISMISS

DORSEY, District Judge.

Plaintiff seeks indemnity or, alternatively, contribution from defendants Yale New Haven Hospital ("YNH") and Ohmeda Chemical ("Ohmeda") for the sum recovered by the Estate of Sandra Cardillo. Complaint, ¶¶ 18, 21, 28, 37.

Plaintiff alleges that on December 6, 1976, Sandra Cardillo received Swine Flu vaccine pursuant to the National Swine Flu Immunization Program Act ("Swine Flu Act"), 42 U.S.C. § 247b. Id., ¶ 8. Thereafter, she developed Guillian–Barre Syndrome ("GBS"), a peripheral nervous disorder. Id., ¶ 9. On April 5, 1977, she was transferred to YNH. Id., ¶ 10.

A tracheostomy was performed at YNH on April 12, 1977, and she was attached to a respirator manufactured by Ohmeda. Id., ¶¶ 11, 23. On April 14, 1977, Mrs. Cardillo was found without a pulse. Id., ¶ 12. Her EEG readings remained flat and she sustained several episodes of cyanosis, severe respiratory distress and hypoxia, resulting in severe brain damage. Id., ¶ 13. Plaintiff alleges that the medical records indicate that she either became disconnected or was disconnected from her respirator, but that the exact cause of, or need for, the disconnection was not shown. Id., ¶¶ 12, 25. In April of 1980, Charles Cardillo, Aministrator of Sandra Cardillo's Estate, sued plaintiff under the Swine Flu Act and the Federal Tort Claims Act, 28 U.S.C. § 1346(b), § 2671, et seq. Cardillo v. United States, 622 F.Supp. 1331, 1332 (D.Conn.1984). Plaintiff was found to have proven that Swine Flu vaccine was a proximate cause of Mrs. Cardillo's illness and awarded her estate $5,000,000, id. at 1349, which included an award for pain and suffering of $3,500,000. Id. at 1348. The court found "that Mrs. Cardillo suffered a torturous form of pain and suffering at least from the morning of April 4, 1977 to April 14, 1977, when the respirator to which she was connected at [YNH] was found disconnected" and, from April 14, 1977 until her death, that she was capable of experiencing pain and suffering, at least on an intermittent basis. Id. at 1347–48.

Plaintiff claims that as a result of separate and independent active acts and omissions of defendants and their respective employees, Sandra Cardillo sustained separate and distinct injuries from those caused by the Swine Flu vaccine which resulted in her coma and ultimately her death. Defendants move to dismiss on the ground that there is no contribution among joint tortfeasors under Connecticut law.

## DISCUSSION

■ Plaintiff does not dispute that "Connecticut is one of the few states which has retained the common law rule denying contribution among joint tortfeasors."[1] Hoff-

[1] "An overwhelming majority of the states, including Connecticut, has abandoned the common law prohibiting contribution among joint tortfeasors either by legislative enactment or judicial adoption, or have substituted joint and several liability with apportioned liability so that there is no need for contribution." Gion-

friddo v. Gartenhaus Cafe, 15 Conn.App. 392, 397 n. 6, 546 A.2d 284 (1988); Conn.Gen.Stat. § 52–572h. Connecticut's provision became effective on October 1, 1986, subsequent to defendants' alleged tortious conduct, and thus no right of contribution existed among joint tortfeasors at the times relevant to this action. Id.

*man v. McNamara,* 688 F.Supp. 830, 834 (D.Conn.1988), citing *Gomeau v. Forrest,* 176 Conn. 523, 524, 409 A.2d 1006 (1979). However, it argues that there are two exceptions: first, contribution or indemnification is allowed where the harm is due to the indemnitor's active conduct which directly and immediately caused the injury; and second, Connecticut law permits apportionment of damages when each tortfeasor has engaged in separate and independent acts of harm.[2]

## A. *Primary/Secondary Negligence*

Plaintiff argues that "one tortfeasor may seek indemnification from another if the latter was 'primarily' negligent and the former only 'secondarily' negligent." *Cimino v. Yale Univ.,* 638 F.Supp. 952, 957 (D.Conn.1986), citing *Fidelity & Cas. Co. v. Jacob Ruppert, Inc.,* 135 Conn. 307, 63 A.2d 849 (1949). "An indemnitee may be chargeable with personal negligence, independent of any negligence of the indemnitor, and still not be chargeable with active or primary negligence. Personal independent negligence may be passive or secondary negligence. It need not necessarily be active or primary negligence." *Kaplan v. Merberg Wrecking Corp.,* 152 Conn. 405, 415, 207 A.2d 732 (1965). Generally, passive or secondary negligence is limited to constructive or technical fault, such as where an owner of land is held liable for injury received resulting from a hazard created by another. *In re General Dynamics Asbestos Cases,* 602 F.Supp. 497, 501 (D.Conn.1984) ("reason for this rule is to prevent the injustice of placing liability on one whose fault is of a much lesser magnitude"); *Preferred Accident Ins. Co. v. Musante, Berman & Steinberg,* 133 Conn. 536, 52 A.2d 862 (1947).

A party seeking indemnity based on "primary" negligence must show: (1) the indemnitor was negligent; (2) the indemnitor's negligence (rather than that of the indemnitee) was the direct, immediate cause of the injury; (3) the indemnitor was in control of the situation to the exclusion of the indemnitee; (4) the indemnitee did not know of the indemnitor's negligence, had no reason to anticipate it, and could reasonably rely on the indemnitor not to be negligent. *See Cimino,* 638 F.Supp. at 957; *Kaplan,* 152 Conn. at 416, 207 A.2d 732.

In resolving this motion under Rule 12(b)(6), Fed.R.Civ.P., the court must accept as true all allegations of the complaint and draw all reasonable inferences in plaintiff's favor. *See Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). "[A] complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The issue is not whether plaintiff will prevail, but whether he is entitled to offer evidence to support his claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). However, plaintiff's complaint must also be construed against the background of the underlying suit which established the liability for which it now seeks reimbursement. *See Cimino,* 638 F.Supp. at 958.

Plaintiff does not argue that either defendant was responsible for Sandra Cardillo's development of GBS, but it contends that defendants' negligence was the immediate cause of injury to Sandra Cardillo, i.e., her untimely death, preceded by a long coma. Plaintiff asserts that that injury is separate and distinct from her injury from the vaccine and is a factual issue. *Weintraub v. Richard Dahn, Inc.,* 188 Conn. 570, 452 A.2d 117 (1982).

This contention ignores the basis on which liability was imposed on plaintiff in the underlying action. After finding that the Swine Flu vaccine was the proximate

---

**2.** Plaintiff does not distinguish between contribution and indemnification and frames its complaint in terms of both. However, the two theories are very much distinct. Indemnification claims reimbursement in full from one primarily liable, while contribution claims reimbursement of a share of a payment made by one tortfeasor that was attributable to a joint tortfeasor. *See, e.g., Nicholson v. United Technologies Corp.,* 697 F.Supp. 598, 607 (D.Conn.1988).

cause of Mrs. Cardillo's illness, the court awarded her estate damages for her medical expenses, lost earnings, funeral expenses, the value of the loss of her life, and pain and suffering. *Cardillo*, 622 F.Supp. at 1348–49. The estate was ordered compensated for damages accrued prior to April 14, 1977, the date the respirator allegedly was negligently disconnected or failed. They included medical expenses from the emergency room visit on April 4, 1977 and her subsequent admittance. "Mrs. Cardillo suffered a torturous form of pain and suffering at least from the morning of April 4, 1977 to April 14, 1977, when the respirator to which she was connected at [YNH] was found disconnected." *Id.* at 1347. Thus, plaintiff's liability flowed from its own acts and omissions in administering the Swine Flu vaccination program. At best, plaintiff can establish that defendants were also active tortfeasors whose acts may have been a cause of damages for which plaintiff was held liable. Plaintiff, having been held to have acted positively so as to have caused the damages for which it was held liable, is not entitled to indemnity from defendants under a primary/secondary negligence theory.

### B. *Apportionment*

■ Plaintiff next contends that Connecticut law permits apportionment of damages when each tortfeasor has engaged in separate and independent acts of harm. Plaintiff argues that its conduct and that of defendants could be found to have been independent of the other in three separate incidents, causing two separate harms to Sandra Cardillo. Each would then be liable only for the harm caused by it. Alternatively, the concurrent, independent acts could be found to have been the proximate cause of a single injury, capable of monetary apportionment between the tortfeasors. *See Reilly v. DiBianco*, 6 Conn. App. 556, 507 A.2d 106, *certif. denied*, 200 Conn. 804, 510 A.2d 192, 193 (1986). YNH asserts that the cases cited by plaintiff do not create an additional exception to the rule that there is no contribution among joint tortfeasors, rather they provide for apportionment, where it is provable, among

co-defendants. Ohmeda argues that plaintiff was only found liable to Mrs. Cardillo's estate for damages proximately caused by its actions and thus there is no basis for apportionment.

"Connecticut has not, by statute, abolished the rule of no contribution between and among joint tortfeasors, but, by judicial decision, has allowed a variation of that theme, apportionment, when it is capable of being proven." 6 Conn.App. at 568, 507 A.2d 106. The court founded this variation on *Gutowski v. New Britain*, 165 Conn. 50, 327 A.2d 552 (1973), and the Restatement (Second) of Torts § 433(B)(2). In *Gutowski*, two police officers used concurrent force to assault the plaintiff. 165 Conn. at 52–54, 327 A.2d 552. The court held both defendants jointly and severally liable and concluded that plaintiff did not have to prove how much of his injury was inflicted by each tortfeasor. *Id.* at 55, 327 A.2d 552. Further, "[w]here the tortious conduct of two or more actors has combined to bring about harm to the plaintiff and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor." *Id.* Since the plaintiff in such a case is relieved from proving causation as to each defendant and can treat all concerned in the injury as constituting one party, it would be inequitable to preclude one defendant from attempting to shoulder what would have been plaintiff's burden as to causation in an attempt to limit its liability. The court in *Reilly*, however, was careful to note that the "*Gutowski* principle is limited to those rare cases where the independent acts of two or more persons combine to bring about one injury *and* one of the actors seeks to isolate his monetary liability by proving the damages arising from his particular involvement in the harm to a plaintiff." 6 Conn.App. at 567, 507 A.2d 106.

Defendants' motions question whether a tortfeasor initially causing an injury may seek contribution from one who causes a new injury or aggravates the existing injury in the course of medical treatment. *See*

8 A.L.R.3d 639. It is assumed for present purposes that plaintiff was held liable not only for tortiously administering the vaccination program but also for the consequences of defendants' alleged tortious conduct of defendants in treating the original injury, i.e., Mrs. Cardillo's GBS.

Neither plaintiff nor defendants have addressed the issue of whether they should be considered separate or joint tortfeasors under the facts alleged by plaintiff. "Joint tortfeasors are 'two or more persons who are liable to the same person for the same harm. It is not necessary that they act in concert or in pursuance of a common design, nor is it necessary that they be joined as defendants.'" *Gionfriddo v. Gartenhaus Cafe*, 15 Conn.App. 392, 398, 546 A.2d 284 (1988), quoting 2 Restatement (Second), Torts § 886A, p. 338, Comment b. Other jurisdictions have held that the tortfeasor originally causing injury and one who subsequently aggravates or causes new injury during treatment are not joint tortfeasors. *Harka v. Nabati*, 337 Pa.Super. 617, 487 A.2d 432, 434 (1985); *Gertz v. Campbell*, 4 Ill.App.3d 806, 282 N.E.2d 28, 31 (1972), *aff'd in part and rev'd in part on other grounds*, 55 Ill.2d 84, 302 N.E.2d 40 (1973). The rationale is that the parties have not acted in concert; the injuries inflicted are severable in point of time; neither has any control over or opportunity to guard against the other's acts; and each breaches a different duty owed to the injured party. *Id.*

■ Where identifiable acts of negligence of the original wrongdoer and those occurring subsequently during treatment are separate from each other in nature and time, the damages should be apportioned accordingly. *Lasprogata v. Qualls*, 263 Pa.Super. 174, 397 A.2d 803, 806 (1979). In *Gertz*, the original tortfeasor and the allegedly negligent treating physician were found not to be joint tortfeasors. 302 N.E.2d at 43. The original tortfeasor was permitted to seek "equitable apportionment" of those damages brought about solely by the subsequent tortious conduct during treatment on the basis that denial of such relief would result in an "indefensi-ble enrichment" of the subsequent tortfeasor. *Id.* at 44–45.

The reasoning of this line of cases is sound and persuasive, consistent with the theory of apportionment in *Reilly*, 6 Conn. App. 556, 507 A.2d 106. "This allocation of responsibility among active independent wrongdoers leaves the total responsibility owed to the [injured party] intact, and in no way deprives [her] of the opportunity for, and the benefit of a damages award equal to the entire damage sustained by [her]." *Id.* at 570, 507 A.2d 106. In *Reilly*, it was noted that the jury could have found that the tortfeasors "acted independently of each other in two separate incidents, causing two separate harms to the plaintiff, with each being liable only for the harm caused by him." *Id.* at 567, 507 A.2d 106.

Plaintiff should be liable for all injury caused by its conduct, including that caused or exacerbated by the independent negligence of a successive tortfeasor when it created the risk of such further negligence. Nonetheless, plaintiff should not be precluded from seeking apportionment of the injury caused by defendants' negligence. *Gertz*, 282 N.E.2d at 31. Defendants have offered no rationale for precluding an equitable apportionment of the loss between the original and successive wrongdoer under the facts alleged. Plaintiff alleges that Mrs. Cardillo suffered injuries due to defendants' independent conduct separate and distinct from those sustained as a result of the vaccine. Though plaintiff's complaint characterizes defendants as active tortfeasors, they are not alleged to have acted jointly or in concert with plaintiff. Further, there is no claim plaintiff controlled or participated in Mrs. Cardillo's treatment. Construing the allegations of plaintiff's complaint in a light most favorable to it, plaintiff has stated a claim against defendants for apportionment. The burden of proof on whether the harm is capable of apportionment is on the plaintiff and presents a question of fact not presently before the court. *See Reilly*, 6 Conn.App. at 566, 507 A.2d 106; *Corbett v. Weisband*, 380 Pa.Super. 292, 551 A.2d 1059, 1079 (1988). Accordingly, defen-

dants' motions to dismiss the claim for apportionment are denied.

SO ORDERED.