**Lina LORENZI, Plaintiff,**

**v.**

**State of CONNECTICUT JUDICIAL BRANCH, Karen Berris, and Sherry Antonacci, Defendant.**

**Civ. No. 3:08CV580 (AWT).**

United States District Court, D. Connecticut.

June 4, 2009.

Kristen Luise Zaehringer, Maximino Medina, Jr., Sarah W. Poston, Zeldes, Needle & Cooper, Bridgeport, CT, for Plaintiff.

Joseph A. Jordano, Attorney General's Office, Hartford, CT, for Defendants.

### RULING ON MOTION TO DISMISS

ALVIN W. THOMPSON, District Judge.

Lina Lorenzi ("Lorenzi") brings this action against the State of Connecticut Judicial Branch (the "Judicial Branch"), Karen Berris in her individual capacity ("Berris"), and Sherry Antonacci in her individual capacity ("Antonacci") alleging, in Count One, discrimination on the basis of race in violation of Title VII, 42 U.S.C. § 2000e–2 as to the Judicial Branch; in Count Two, discrimination on the basis of national origin in violation of Title VII, 42 U.S.C. § 2000e–2 as to the Judicial Branch; in Count Three, race discrimination in violation of 42 U.S.C. § 1981 as to defendants Berris and Antonacci; in Count Four, violation of 42 U.S.C. § 1983 based on the equal protection clause as to defendants Berris and Antonacci; in Count Five, retaliation in violation of Conn. Gen. Stat. § 46a–60(a)(4) as to defendant Berris; and in Count Six, intentional infliction of emotional distress as to defendants Berris and Antonacci. The defendants have moved to dismiss Count Three and Count Six. For the reasons set forth below, the motion is being granted with respect to Count Three with leave to replead and granted with respect to Count Six.

### I. FACTUAL ALLEGATIONS

For the purposes of deciding this motion, the court takes as true the following allegations in the Amended Complaint. In 2004, Lorenzi, who had worked for the Judicial Branch since 1998, was promoted to Program Manager II in the Jury Administration Division of Centralized Court Services. She reported to Berris, who in turn reported to Antonacci. From her second day in that position, Lorenzi was subjected to discriminatory treatment and harassment by the individual defendants. On that day, when the Director of Centralized Court Services retired, Berris asked Lorenzi if she planned to apply for the position. Lorenzi said she would, and then added that Berris should also apply. Berris then stated "Well you do have some things over me; you have been a Clerk; and you are a Latina woman who went to a Tier 1 law school." (Amended Complaint (Doc. No. 24)("Compl.") at ¶ 12.) From that point on, despite Lorenzi's "numerous" achievements (id. at ¶ 15), Lorenzi, unlike similarly situated co-workers, was subjected to, inter alia, demeaning and unprofessional speech, deliberate distortions of her work, subjective non-professional appraisals of her job performance,

inferior office space, and denial of rightful pay raises and promotions. She was reprimanded for actions such as directly dialing Antonacci instead of going through her secretary and eating "odiferous fish" at her desk. (*Id.* at ¶ 24.) She was micromanaged by Berris, to the point that Berris once followed her into the restroom. At one point, Berris threatened her with termination if she did not "make a contract with me [to] follow the directives that I give you and follow the timelines that I give you, regardless of what your preferences may be." (Compl. at ¶ 17.) Berris also directed Lorenzi to "develop[ ] a harmonious relationship with [her] colleagues and limit [her] relationships with line staff." (*Id.*) On multiple occasions, Berris brought Lorenzi into her office, closed the door, and screamed at her.

In April 2005, Lorenzi complained to Antonacci, who told Lorenzi that she could not help because she "needed to protect defendant Berris." (*Id.* at ¶ 33.) In October 2005, Lorenzi complained to Antonacci again about what she perceived to be unfair performance evaluations from Berris, particularly the directive to limit her interactions with line staff, many of whom were Latina. Antonacci responded: "Don't give me that Latina shit!" · (*Id.* at ¶ 23.) Lorenzi's complaints to Antonacci ultimately had no effect on her ˙treatment in the workplace. There are few Latina employees at the managerial level at the Judicial Branch, and Latino employees were rarely promoted.

By February 2006, at the direction of her physician, Lorenzi took medical leave from work to receive treatment for an anxiety disorder and related conditions. She was not medically cleared to return to work until four and one-half months later. In April 2006, Lorenzi filed a complaint with the Connecticut Commission on Human Rights and Opportunities against each defendant, alleging that she had been discriminated against in her employment based on her race and national origin, and that they had retaliated against her for complaining about the discrimination. On her first day back at work, Berris presented Lorenzi with a "highly critical evaluation of her job performance during the four months preceding her leave." (*Id.* at ¶ 36.)

In July 2006, Lorenzi was asked to prepare a draft report, with the revisions to be completed no later than August 10, 2006. On that day, Berris "taunted" the plaintiff by leaving the office early before Lorenzi could finish the work, and "inform[ed] [Lorenzi] with a smile that the report was late." (*Id.* at ¶ 29.) Lorenzi believes that she later transmitted the report to Berris via email at 5:00 p.m. on August 10, and the defendants acknowledge that the report had arrived in Berris' email inbox by no later than 7:31 a.m. on August 11. On August 11, Lorenzi's employment was terminated, and her duties were assumed by a white woman.

## II. *LEGAL STANDARD*

■■■■ When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), *citing Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual alle-

gation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Stores Co.,* 34 F.Supp.2d 130, 131 (D.Conn.1999), *quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683).

■ In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993).

## III. *DISCUSSION*

### A. Count Three

■ The defendants correctly point out that when a person's rights protected by § 1981 are violated by a state actor (as opposed to a private person), the aggrieved party has a cause of action pursuant to 42 U.S.C. § 1983, not 42 U.S.C. § 1981. *See Jett v. Dallas Ind. School*

*Dist.,* 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Lorenzi agrees and seeks permission to replead. The court is granting Lorenzi permission to do so.

### B. Count Six

■ The Connecticut Supreme Court has set forth the necessary elements of a claim for intentional infliction of emotional distress, as follows:

> In order for the plaintiff to prevail in a case for liability under intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*Appleton v. Board of Educ. of the Town of Stonington,* 254 Conn. 205, 210, 757 A.2d 1059 (2000)(internal quotation marks and citations omitted). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Ancona v. Manafort Bros., Inc.,* 56 Conn.App. 701, 746 A.2d 184, 192 (2000).

■ In comparison, "[c]onduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient...." *Sebold v. City of Middletown,* No. Civ. No. 3:05–CV–1205(AHN), 2007 WL 2782527, at *30, 2007 U.S. Dist. LEXIS 70081, at *95 (D.Conn. Sept. 21, 2007)(internal citations omitted). Routine employment actions, even if made with improper motivations, does not constitute extreme or outrageous behavior. *See Adams v. Hartford Cour-*

*ant,* 2004 U.S. Dist. LEXIS 8546, 2004 WL 1091728, at *4 (2004); *Perodeau v. City of Hartford,* 259 Conn. 729, 757, 792 A.2d 752 (2002)(individuals in the workplace should expect to be subject to workplace gossip, rivalry, personality conflicts, and similar annoyances).

▆▆▆▆▆ Whether a defendant's conduct is extreme and outrageous is a question, in the first instance, for the court. *See John-son v. Chesebrough–Pond's USA Co.,* 918 F.Supp. 543, 552 (D.Conn.), *aff'd,* 104 F.3d 355 (2d Cir.1996). Here, the defendants' alleged conduct does not rise to the level of extreme and outrageous. Close supervision, the demeaning and unprofessional speech alleged by the plaintiff, unfair job appraisals, inferior office space, denial of pay raises and promotions, orders to limit interactions with certain other employees, insults about one's lunch, discrimination on the basis of race and/or national origin, and/or retaliating against an employee for complaining about such discrimination, do not meet the standard for finding that conduct was extreme and outrageous. *See, e.g., White v. Martin,* 23 F.Supp.2d 203, 208 (D.Conn.1998), *aff'd,* 198 F.3d 235 (2d Cir.1999)(employer's alleged gender discrimination, including denial of a promotion, discipline, and harassment, was not extreme or outrageous conduct). Therefore, the motion to dismiss as to this count is being granted.

## IV. *CONCLUSION*

For the reasons set forth above, the defendants' Motion to Dismiss (Doc. No. 32) is hereby GRANTED with respect to Count Three with leave to replead within 20 days, and GRANTED with respect to Count Six.

It is so ordered.