FRANK P. GIONFRIDDO, ADMINISTRATOR (ESTATE OF KIM MARIE GIONFRIDDO), ET AL. *v.* GARTENHAUS CAFE (5477)

DUPONT, C. J., BORDEN and FOTI, Js.

Argued February 9—decision released August 9, 1988

*Edward F. Hennessey,* with whom were *Kathleen C. Stone* and, on the brief, *Jennifer Kurr Rashin,* for the appellants (plaintiffs).

*Philip J. O'Connor* and *Henry C. Ide,* with whom, on the brief, were *Stephen M. Riley* and *Phyllis J. Trowbridge,* for the appellee (defendant).

DUPONT, C. J. This is an action against the defendant, a purveyor of alcoholic beverages, for damages claimed by the administrator of the estate of the decedent, a woman who was killed when her car was struck by a vehicle driven by an intoxicated driver. The driver had been served alcoholic beverages by the defendant.

The decedent was killed when a vehicle driven by Michael Gilliam traversed into the wrong lane of traffic on a highway and collided with the vehicle driven by her. Gilliam admitted that he had been intoxicated at the time of the accident and pleaded guilty to misconduct with a motor vehicle in violation of General Statutes § 53a-57. On the day of the accident, Gilliam arrived at the Gartenhaus Cafe at approximately 6:30 p.m. Gilliam testified that he had "probably ten [or] twelve" alcoholic drinks before leaving the Gartenhaus Cafe between 8:00 p.m. and 8:30 p.m. Gilliam further testified that he did not drink anything after leaving. He recalled driving a leased vehicle for about five to ten miles to a point near the scene of the accident but had no memory of the fatal accident, which occurred sometime between 9:30 p.m. and 9:45 p.m.

The plaintiff alleged four theories of liability in his complaint against the defendant. He claimed liability for the sale of alcohol to an intoxicated person in violation of the dram shop act; General Statutes § 30-102;[1] liability for negligence, liability for creating a public nuisance on the highway, and liability based on wanton and reckless misconduct pursuant to *Kowal* v. *Hofher,* 181 Conn. 355, 362, 436 A.2d 1 (1980). The plaintiff has appealed from the judgment rendered in favor of the defendant subsequent to the decision of the trial court, *Wright, J.,* granting the defendant's motion to strike the negligence and nuisance counts from the plaintiff's complaint. The plaintiff also appeals from the judgment rendered by the trial court, *Corrigan, J.,* in favor of the defendant after a jury verdict on the dram shop and *Kowal* counts.

The plaintiff claims that Judge Wright erred (1) in striking the negligence count from the complaint, and (2) in striking the public nuisance count from the complaint.[2] He also claims that Judge Corrigan erred (1)

---

[1] General Statutes § 30-102, known as the dram shop act, provides in relevant part: "If any person by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of twenty thousand dollars . . . . " General Statutes § 30-102 created "a new tort liability which is based upon a specified course of conduct and the consequences of such conduct. *Staples* v. *Lucas,* 142 Conn. 452, 456, 115 A.2d 337 (1955). The delict defined by [the dram shop act] is not the sale of liquor to create a condition of intoxication. It is rather the sale of liquor to one who is already intoxicated. No causal relation between the sale and the injury is required. *London & Lancashire Indemnity Co.* v. *Duryea,* 143 Conn. 53, 59, 119 A.2d 325 (1955). To recover under the statute, a plaintiff must bring himself squarely within its provisions. Id., 57. In each case, therefore, the trier must decide as a question of fact: whether there was (1) a sale of intoxicating liquor (2) to an intoxicated person (3) who, in consequence of such intoxication, causes injury to the person or property of another." *Sanders* v. *Officers Club of Connecticut, Inc.,* 196 Conn. 341, 348-49, 493 A.2d 184 (1985).

[2] Both *Kowal* v. *Hofher,* 181 Conn. 355, 357-58, 436 A.2d 1 (1980) and *Boehm* v. *Kish,* 201 Conn. 385, 389, 517 A.2d 624 (1986), reaffirmed the

in refusing to charge the jury as requested with respect to the liability of the defendant under the *Kowal* doctrine, (2) in refusing to correct misconceptions in the defendant's argument to the jury concerning the meaning of the term "intoxication" as an element of the dram shop act, (3) in recharging the jury on the definition of "intoxication," and (4) in denying the plaintiff's motion to set aside the verdict.

The defendant argues that even if the plaintiff's claims have merit, the judgments of the trial courts

---

rule that "there is no common law action in negligence against one who furnished, whether by sale or gift, intoxicating liquor to a person who thereby voluntarily became intoxicated and in consequence of his intoxication injured the person or property of himself or of another." *Kowal* v. *Hofher,* supra, 357. "The reason underlying the rule is that the proximate cause of the intoxication was not the sale or furnishing of the liquor but the consumption of it by the purchaser or donee." Id., 357–58. It was recently stated, however, in *Ely* v. *Murphy,* 207 Conn. 88, 93, 540 A.2d 54 (1988), that the "proposition that intoxication results from the voluntary conduct of the person who consumes intoxicating liquor assumes a knowing and intelligent exercise of choice, and for that reason is more applicable to adults than to minors." The *Ely* court held that a minor's "consumption of alcohol does not, as a matter of law, constitute the intervening act necessary to break the chain of proximate causation and does not, as a matter of law, insulate one who provides alcohol to minors from liability for ensuing injury." Id., 95. Accordingly, the decision in *Ely* v. *Murphy,* supra, establishes that a person injured by a driver who had been served alcoholic beverages by another may sue the latter in common law negligence if the driver who was served intoxicating liquor was a minor for the purposes of the minimum legal drinking age in this state. *Ely* does not discuss whether a cause of action exists for the negligent service of alcohol to an adult, or whether a cause of action exists in nuisance against the server of alcohol to a minor or an adult. At least in cases involving the sale of alcohol to a minor, a person who is liable under the dram shop act may also be liable in common law negligence. The difference between the two causes of action is that liability under common law negligence requires a causal connection between the serving of the alcohol and the injury, whereas liability under the dram shop act does not. See footnote 1, supra. In common law negligence actions, recovery for compensatory damages is commensurate with the harm incurred and is theoretically unlimited in amount, whereas liability under the dram shop act is limited to an amount not greater than $20,000.

should be affirmed[3] because the plaintiff has already obtained a judgment against other third persons and has already received full satisfaction for damages sustained by his decedent as determined by a jury.[4]

Prior to the trial of this action against the defendant, the plaintiff brought a wrongful death action against Michael Gilliam and the lessor of the vehicle driven by Gilliam. The plaintiff was ultimately awarded judgment in the amount of $1,187,763, which judgment was satisfied in full by the defendants to that action. See *Gionfriddo* v. *Avis Rent A Car,* 192 Conn. 280, 472 A.2d 306 (1984) (*Gionfriddo I*). The present wrongful death action involves the same injuries sustained by the same decedent. By way of a motion for summary judgment and a motion in limine, the defendant in this case requested the trial court to bar the action on the ground that an injured party is entitled to only one satisfaction of judgment for a single harm. The trial court, citing *Skut* v. *Hartford Accident & Indemnity Co.,* 142 Conn. 388, 114 A.2d 681 (1955), held that whether a party, who may be responsible for the same harm, is discharged is a question of intention of the parties, and refused to bar the present action on the ground that the plaintiff did not intend to release the defendant from any legal responsibility for the harm it might be found to have caused. The plaintiff claims that the *Skut* case applies to this case.[5]

---

[3] Practice Book § 4013 (a) (1) provides that an appellee may file a timely preliminary statement of issues to "present for review alternate grounds upon which the judgment may be affirmed," or to "present for review adverse rulings or decisions of the court which should be considered on appeal in the event the appellant is awarded a new trial . . . ."

[4] The defendant also argues that the judgment on the dram shop count should be affirmed because the defendant is entitled to a credit for the prior satisfaction, which credit would preclude the assessment of dram shop damages in this case. This claim is intimately intertwined with the defendant's primary claim that the satisfaction of judgment by one or more of several joint tortfeasors bars a subsequent action against any other joint tortfeasor.

[5] The present case involves the issues of whether defensive collateral estoppel principles and whether the paramount principle of tort law that

"[O]rdinarily the payment of a judgment against one of several persons who are jointly and severally liable for a single tort constitutes a complete satisfaction of the wrong and discharges the other from all further liability . . . ." *Skut* v. *Hartford Accident & Indemnity Co.*, supra, 397, citing *Ayer* v. *Ashmead*, 31 Conn. 447, 452, 83 A.D. 154 (1863); see also *Burkhardt* v. *Armour & Co.*, 115 Conn. 249, 161 A. 385 (1932); cf. *Vincent* v. *McNamara*, 70 Conn. 332, 39 A. 444 (1898); *Atwater* v. *Tupper*, 45 Conn. 144, 148 (1877) (in an action in trover, a satisfied judgment by one of several tortfeasors bars an action of trover against another); *Sheldon* v. *Kibbe*, 3 Conn. 214 (1819). At common law, no contribution exists between and among joint tortfeasors, and a plaintiff may elect to satisfy his damages against any culpable defendant.[6] *Fox* v. *Fox*, 168 Conn. 592, 595, 362 A.2d 854 (1975); *Rode* v. *Adley Express Co.*, 130 Conn. 274, 33 A.2d 329 (1943).

The rules regarding joint and several liability apply in this case if we can conclude that (1) the defendant purveyor of alcoholic beverages and the intoxicated driver, who was a defendant in the first action, are joint

---

a plaintiff may be fully compensated only once for his injuries should be employed. *Skut* v. *Hartford Accident & Indemnity Co.*, 142 Conn. 388, 114 A.2d 681 (1955), in contrast, involved the release of a joint tortfeasor when a judgment has been partially satisfied and the total amount of damages has been established in a prior suit against all of the joint tortfeasors. The question in *Skut* was whether the plaintiff, by accepting the partial payment from one of the tortfeasors, intended to release the other. The decision in *Skut* is simply inapposite to this case.

[6] An overwhelming majority of the states, including Connecticut, has abandoned the common law rule prohibiting contribution among joint tortfeasors either by legislative enactment or judicial adoption, or have substituted joint and several liability with apportioned liability so that there is no need for contribution. See cases collected in 2 Restatement (Second), Torts § 886A, pp. 197–98, reporter's note. See also General Statutes § 52-572h (limitation of a person's liability to his proportional share of recoverable damages and the exercise of a right of contribution). General Statutes § 52-572h, allowing for contribution, became effective on October 1, 1986. See Public Acts 1986, No. 86-338, § 17. At the time of the commencement of this case, however, no right of contribution existed among joint tortfeasors.

tortfeasors, (2) the judgment which was satisfied involved damages for the exact same injuries as involved in the present action, and (3) the determination by the factfinder on the issue of damages in the first action is entitled to govern the amount of damages involved in the present action under the doctrine of collateral estoppel. We conclude that all three of these conditions are satisfied in this case.

I

### JOINT TORTFEASORS

Joint tortfeasors are "two or more persons who are liable to the same person for the same harm. It is not necessary that they act in concert or in pursuance of a common design, nor is it necessary that they be joined as defendants." 2 Restatement (Second), Torts § 886A, p. 338, Comment b. The rules regarding joint tortfeasors are applicable "to all torts, including not only negligence but also misrepresentation, defamation, injurious falsehood, nuisance or any other basis of tort liability." Id. In *Zucker* v. *Vogt,* 200 F. Sup. 340, 344 (D. Conn. 1961), aff'd, 329 F.2d 426 (2d Cir. 1964), the court concluded that under Connecticut law the purveyor of alcohol and the intoxicated driver were joint tortfeasors. We agree with that conclusion on the basis that the independent acts of each, namely, the sale of an alcoholic beverage to an already intoxicated person and the voluntary consumption of alcohol to the point of intoxication prior to the operation of a motor vehicle, combine or coalesce to produce the same harm, in this case the death of the decedent. See *Sanders* v. *Officers Club of Connecticut, Inc.,* 196 Conn. 341, 354–55, 493 A.2d 184 (1985) (purveyor of intoxicating liquors and intoxicated driver assumed to be joint tortfeasors); *Laznovsky* v. *Furdanowicz,* 22 Conn. Sup. 297, 300–301, 170 A.2d 734 (1961).

## II

### Just Damages

Having concluded that the defendant in this case is a joint tortfeasor, we must decide whether the rule of joint and several liability is applicable to all of the causes of action involved here. We conclude that it is applicable.

The principle of joint and several liability among joint tortfeasors is applicable not only in all tort theories of liability; 2 Restatement (Second), Torts § 886A; but is equally applicable to actions in trespass, contracts, ejectment, trover, and malicious prosecution. *Sheldon* v. *Kibbe,* supra, 222–23. Accordingly, this principle governs the plaintiff's claims with respect to negligence, wanton and reckless misconduct, and public nuisance.

We further conclude that this principle applies to the plaintiff's dram shop action against the defendant. The dram shop act imposes a "tort liability" not a penal liability. *Sanders* v. *Officers Club of Connecticut, Inc.,* supra, 348. Although it is designed to aid in the enforcement of state liquor laws as well as to protect the public, the main objective of the statute is to afford compensation for injuries to an individual. "While it may be said that in one sense the statute is penal, nevertheless it is primarily remedial because it gives a remedy enforceable by an individual in a civil action and allows the recovery of damages in an amount commensurate with the injuries suffered." *Pierce* v. *Albanese,* 144 Conn. 241, 249–50, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957). This interpretation follows from the explicit limitation of General Statutes § 30-102 that damages properly recoverable constitute "just damages" not in excess of $20,000. "Just damages" means simply com-

pensatory rather than exemplary or punitive damages. The damages involved in the present action are precisely those which were recovered in the prior action, namely, compensatory damages for the death of the decedent.

To allow the plaintiff to recover damages in the present action, then, would result in double damages, which would be contrary to sound principles of law and public policy. In justification of his bringing the second action, the plaintiff points to the suggestion by the court in *Pierce* v. *Albanese,* supra, 261, that the liability action against the purveyor of alcohol and the tort action against the operator of the motor vehicle should be tried separately. The reason that court gave in support of separate actions was that separate theories of liability were involved. This reason is no longer viable in light of the fact that since *Pierce,* common law tort actions against a server of alcohol have been recognized in *Kowal* and in *Ely,* supra. A server of alcohol and an operator of a motor vehicle have been joined in the same trial as joint tortfeasors. See, e.g., *Ely* v. *Murphy,* supra; *Laznovsky* v. *Furdanowicz,* supra. If a plaintiff chooses, as a tactical maneuver, to institute several actions, there can still be only one recovery for the harm incurred. If a plaintiff is awarded two or more judgments, he must then elect which judgment to satisfy. If one of the judgments is fully satisfied, then he is barred from bringing further action against the other joint tortfeasors. If one tortfeasor makes payment that partially satisfies a judgment in the first action, then that amount is credited against any liability found to exist in the second action against the other tortfeasors and operates as payment pro tanto. 2 Restatement (Second), Torts § 885(3);[7] *Laznovsky* v. *Furdanowicz,* supra, 301.

---

[7] The 2 Restatement (Second), Torts § 885 (3) provides: "A payment by any person made in compensation of a claim for a harm for which others

## III

### DEFENSIVE COLLATERAL ESTOPPEL

In this case, the prior judgment rendered in *Gionfriddo I*, in the amount of $1,187,763 for compensatory damages as determined by a jury, has been satisfied in full by the defendants in that action. We conclude that the amount of damages awarded in *Gionfriddo I* resolved the issue of damages in the present case. As a result, once we have credited the amount paid by the other joint tortfeasors against the amount representing fair and just damages for the death of the decedent, no damages are owed by the defendant in this case and it is therefore discharged from all further liability.

"The effect of a judgment for or against one of several tortfeasors upon claims against others who were or may have been liable for the same harm or with reference to the same subject matter is determined by the principles of res judicata." 2 Restatement (Second), Torts § 884. The rules of discharge and credit of payments pro tanto, pertaining to other joint tortfeasors upon the satisfaction of a judgment by one of several tortfeasors, involve the application of the principles relevant to claim preclusion and issue preclusion.

The doctrines of res judicata and collateral estoppel protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation.

---

are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment." This rule applies when, as here, all of the parties are liable for the entire harm. Id., comment a, p. 333. This rule does not apply to joint tortfeasors who are liable only for proportionate shares of a harm. See *Reilly* v. *DiBianco*, 6 Conn. App. 556, 507 A.2d 106, cert. denied, 200 Conn. 804, 510 A.2d 192 (1986); *Gutowski* v. *New Britain*, 165 Conn. 50, 327 A.2d 552 (1973); see also Public Acts 1986, No. 86-338 § 3 (c).

Res judicata or claim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit. This case addresses the question of whether collateral estoppel applies to the issue of damages determined by the jury in *Gionfriddo I*. The trial court agreed with the plaintiff that the doctrine of collateral estoppel is only applicable where mutuality of parties is present. We disagree.

For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. *State* v. *Ellis*, 197 Conn. 436, 463, 497 A.2d 974 (1985); see also Restatement (Second), Judgments § 27.

These conditions are satisfied in this case. *Gionfriddo I* and the present action were both brought under the wrongful death statute, General Statutes § 52-555. That statute provides that the administrator of the decedent's estate may recover "just damages from the party legally at fault," as "measured by the value to the decedent of his or her own life." *Foran* v. *Corangells*, 153 Conn. 356, 216 A.2d 638 (1960). The question of what constitutes "just damages" in this case is, therefore, the same damage question presented to the jury in *Gionfriddo I*. The judgment awarding $1,187,736 to the plaintiff established that the plaintiff in that case, who is also the plaintiff in this case, obtained a final judicial determination of the value of the decedent's damages.

The principles of collateral estoppel always apply where both of the parties in the second action were present in the first action. It has not yet been squarely decided in this state whether the doctrine of collateral

estoppel applies where only the party against whom estoppel is sought to be used was present in the first action.

In his brief, the plaintiff avers that "Connecticut law defines collateral estoppel as 'that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action *between the same parties* upon a different claim.' *In re Juvenile Appeal,* 190 Conn. 310 [316, 460 A.2d 1277] (1983)." (Emphasis added.) The requirement that both of the parties be the same is the requirement of mutuality. The doctrine of *mutuality of parties* thereby effectively limits the scope of collateral estoppel. Under the mutuality doctrine, neither party may use a prior judgment as an estoppel against the other unless both parties were bound by the judgment. We note that in *In re Juvenile Appeal,* supra, both parties were before the court in the first suit, and, therefore, the question of mutuality of the parties was not in issue. In *Brockett* v. *Jensen,* 154 Conn. 328, 338, 225 A.2d 190 (1966), mutuality was held to be a requirement with respect to the *offensive* use of collateral estoppel principles. It has not been decided, however, whether the mutuality of parties is required in the defensive use of collateral estoppel principles.

Until recently, a majority of the jurisdictions required the element of mutuality. See discussion in *Parklane Hosiery Co.* v. *Shore,* 439 U.S. 322, 326–27, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979). The element of mutuality was acknowledged in § 82 of the Restatement of Judgments. Connecticut cases also have cited the Restatement of Judgments in mandating mutuality between the parties. See, e.g., *Brockett* v. *Jensen,* supra, 338. We note that the Restatement (Second), Judgments § 29, following a general abrogation of the requirement by an increasing number of jurisdictions, does not require mutuality.

We believe for the reasons stated below, that, on the facts of this case, the mutuality requirement in the application of collateral estoppel principles should not apply. We emphasize that this case involves the *defensive use* of collateral estoppel principles. Defensive use of collateral estoppel occurs when a defendant in a second action seeks to prevent a plaintiff from relitigating an issue that the plaintiff had previously litigated in another action against the same defendant or a different party.

The first major assault on the mutuality doctrine occurred in *Bernhard* v. *Bank of America,* 19 Cal. 2d 807, 122 P.2d 892 (1942). Judge Traynor, writing for a unanimous court, stated: "The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted. The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided. . . . He is bound by that litigation only if he has been a party thereto or in privity with the party thereto. . . . There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.

"No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend." (Footnotes omitted.) Id., 811–12.

Moreover, there are other good reasons for abrogating the mutuality rule. The United States Supreme Court, in recognizing that *Bernhard* has had a significant impact on many state and federal decisions espe-

cially where the prior judgment was invoked defensively, acknowledged the validity of *Bernhard's* criticism, and reasoned that it is no longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue. "In any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources. . . . Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or 'a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.' " *Blonder-Tongue Laboratories, Inc.* v. *University of Illinois Foundation,* 402 U.S. 313, 329, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971), quoting *Kerotest Mfg. Co.* v. *C-O-Two Co.,* 342 U.S. 180, 185, 72 S. Ct. 219, 96 L. Ed. 2d 200 (1952).

We agree with the reasoning behind the abandonment of the mutuality requirement in cases involving defensive collateral estoppel. "In determining the validity of a plea of [collateral estoppel] three questions are pertinent: Was the issue decided in a prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" *Bernhard* v. *Bank of America,* supra, 813. All of these questions must be affirmatively answered in this case. As a result, the plaintiff is estopped from relitigating the issue of compensatory damages. "Both orderliness and reasonable time saving in judicial administration require that this be so unless some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case." *Bruszewski*

v. *United States,* 181 F.2d 419, 421 (3d Cir.), cert. denied, 340 U.S. 865, 71 S. Ct. 87, 95 L. Ed. 2d 632 (1950). There are no overriding considerations of fairness to the plaintiff present in the case.

Thus, the damages awarded in *Gionfriddo I* govern the issue of damages in this case. As we noted earlier, a satisfaction of a judgment rendered against one tortfeasor, although not necessarily discharging the liability of other tortfeasors liable for the same harm; 2 Restatement (Second), Torts §§ 885 and 886; has the effect of diminishing the liability of the other tortfeasors. Id., § 885 (3). The adjudication of damages in *Gionfriddo I* had the effect of delimiting the plaintiff's redress in this case. The payment in full of the judgment in *Gionfriddo I* had the effect of satisfying in full the plaintiff's claim against the defendant in this case. A plaintiff may be compensated only once for his just damages for the same injury. From this maxim this plaintiff cannot escape.

We conclude that the satisfaction of the earlier judgment bars the bringing of this action against the defendant and affirm the judgment on this ground. The defendant moved for summary judgment on the ground that the plaintiff was barred from bringing an action against it because the plaintiff had already received full compensation for the same loss. Although it was error for the trial court to deny the defendant's motion for summary judgment, we affirm the subsequent judgment rendered in favor of the defendant.

There is no error.

In this opinion the other judges concurred.