[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: SUMMARY JUDGMENT (117.00)
The plaintiff, Paul L. Gould ("Gould"), contractor. and Paul L. Gould, Inc., filed a one count revised complaint sounding in negligence and indemnification against defendants William S. Valus ("Valus") and Roger Carpenter ("Carpenter"), professional architects. The complaint alleges that Valus entered into a written contract with Takis and Ourania Argentinis ("Argentinis") to design plans for the construction of a custom home. Thereafter, Gould entered into a written contract with the Argentinis for the construction of the home. The home was to be constructed by Gould in accordance with the plans prepared by the defendants, Valus and Carpenter.
After the Argentinis' moved in, defects in the structure appeared. The plaintiffs allege that the damage to the Argentinis' residence was "the result of the active negligence, lack of care and lack of professional skill of the defendants in the design of the plans and in the supervision of the construction of said custom home."
A prior action was brought by the Argentinis' against Gould alleging that Gould had breached a construction contract with the Argentinis' and had violated the new home express warranty provisions of Connecticut General Statutes 47-117. CT Page 7812 Argentinis v. Gould (J.D. of Fairfield at Bridgeport, CV82 0202729S). Gould sought to foreclose on a purchase money mortgage for the transaction that he had taken from Argentinis. The two actions were consolidated. The defendants in the. pending case, Valus and Carptenter, were not named defendants in either of those actions. The matter was tried before Attorney Trial Referee Edmund Miller (ATR) who rendered a report. (See Defendants' Memorandum of Law in Support of the Motion for Summary Judgment, exhibit B).
Attorney trial Referee Miller found the following to be defects in the construction of the home:
a. A defect in the well installed to supply water which was illegally and improperly installed, thereby causing contamination.
b. Improperly built basement which became flooded on four different occasions causing damage to the plaintiffs' personal property together with attendant expense to prevent future flooding and damage.
c. A deficiency in the heating system which cased the system to operate inefficiently, providing uneven heat throughout the house, which required extensive repair.
d. Defective siding which was other than that called for in the contract and the specifications, which was improperly installed, thereby cracking and splitting in various places.
e. Numerous other deficiencies in the interior of the house.
The ATR found that Gould materially breached the contract and recommended that a judgment enter for the Argentinis' in the amount of $73,068.75. The court entered judgment as per the ATR's report.
The court also found for the Argentinis' in the foreclosure action and held that the defendant was not entitled to the $43,000.00 unpaid balance on the purchase money mortgage from the Argentinis' to Gould.
The case was appealed to the appellate court and that court, relying on Edens v. Kole Construction Co., 188 Conn. 489
(1982, affirmed the judgment. Argentinis v. Gould, 23 Conn. App. 9
(1990). The Supreme Court granted Gould's petition for certification and reversed only as to the amount of the judgment, finding that the $43,000.00 balance on the mortgage should have been used as a setoff against the damage award. CT Page 7813 Argentinis v. Gould, 219 Conn. 151 (1991). The court overruled Edens. Id. at 156.
The defendants in the present action move for summary judgment on the ground that this pending litigation is barred by the doctrine of defensive collateral estoppel. The defendants have submitted a memorandum of law in support of the motion along with an affidavit of Valus and several exhibits. The plaintiffs have submitted a memorandum in opposition along with several exhibits including excerpts of depositions of Valus.
"Practice Book 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof sumitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Connell v. Colwell, 214 Conn. 242,246 (1990). The party moving or summary judgment has the 3 burden of establishing the nonexistence of any material fact. Id. The opposing party must then substantiate its adverse claim by showing that there is a genuine issue of material fact together with evidence disclosing the existence of such an issue. Id. The court must view the evidence in the light most favorable to the nonmoving party. Id.
In support of the motion, the defendants contend that in the prior action, Argentinis v. Gould, the trial referee determined that the architects, Valus and Carpenter, had submitted plans and specifications that were structurally sufficient. He also found that the dwelling's deficiencies were not attributable to these plans, but rather resulted from poor workmanship by Gould. The defendants argue that this is the precise issue that the plaintiffs are seeking to litigate in the pending matter, and thus, the doctrine of collateral estoppel bars this action.
Defendants also claim that it is immaterial that defendants were no parties to the prior action as mutuality of parties is no longer required in the application of defensive collateral estoppel under the Appellate Court's decision in Gionfriddo v. Gartenhaus Cafe, 15 Conn. App. 392 (1988).
The plaintiffs counter that the Supreme Court in Gionfriddo v. Gartenhaus Cafe, 211 Conn. 67 (1987) declined to adopt the Appellate Court's finding, and thus, mutuality of parties remains a prerequisite in collateral estoppel. Because the parties in the pending action are different from those in the prior action, collateral estoppel, according to the plaintiffs, cannot be invoked to preclude Gould from asserting the claims against Valus and Carpenter. The plaintiffs also contend that the testimony of Valus, who was called as a witness CT Page 7814 in the Argentinis v. Gould action, raises questions of fact as to whether the plans were defective and were the cause of the damage sustained by the Argentinis'. Plaintiff argues that the prior action focused on claims of breach of the construction contract and express warranty while in this action Gould seeks to establish that the defendants' defective plans helped cause the damages.
 "Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit." Gionfriddo v. Gartenhaus Cafe, 15 Conn. App. 392, 402, 546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989). The purposes underlying the doctrine of collateral estoppel are to protect the finality of judicial determinations, and to conserve time and judicial resources. Id. Historically, in order for collateral estoppel to apply, the adversaries in the second action must have been party adversaries in the first action. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 323, 326-27, 99 S.Ct. 645, 58 L.Ed.2d 552
(1979). A frequently cited and basic reason for this mutuality requirement is to assure that the party against whom estoppel is to be used has had an opportunity fully and fairly to litigate the issue in the first action. Ashe v. Swenson, 397 U.S. 436, 444, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1969); State v. Fritz, 204 Conn. 156, 173, 527 A.2d 1157 (1987); Gionfriddo v. Gartenhaus Cafe, supra. The doctrine of collateral estoppel differs from res judicata in that the latter involves claim preclusion, and the former, issue preclusion. The effect of requiring mutuality is to limit the scope of collateral estoppel so that neither party in a second action can use a prior judgment for estoppel purposes against the other unless both were adversaries in the first case and bound by that prior action.
 Numerous federal and state courts have abandoned the automatic requirement of mutuality. United Banana Co. v. United Fruit Co., 172 F. Sup. 580, 588 (D.Conn. 1959); Bernhard v. Bank of America, 19 Cal.2d 807, 813, 122 P.2d 892 (1942); Read v. CT Page 7815 Sacco, 49 App.Div.2d 471, 473, 375 N.Y.S.2d 371 (1975). Moreover, one prime authority on which the mutuality requirement in successive civil cases was based, namely, Restatement, Judgments 82, was revised in Restatement (Second), Judgments 38, to abandon that requirement. The revised section provides as follows: "Parties who are not adversaries to each other under the pleadings in an action involving them and a third party are bound by and entitled to the benefits of issue preclusion with respect to issues they actually litigate fully and fairly as adversaries to each other and which are essential to the judgment rendered."
Griffin v. Parker, 22 Conn. App. 610, 615-16 (1990), rev'd. on other grounds, 219 Conn. 363 (1991).
For an issue to be subject to collateral estoppel it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." Hansted v. Safeco Ins. Co. of America, 19 Conn. App. 515, 517 (1989), quoting from Gionfriddo, supra, 15 Conn. App. 401-402.
The court must determine two issues: (1) whether the issue of the adequacy of the plans and specifications was fully and fairly litigated and a determination made on this issue in the prior suit of Argentinis v. Gould; and, (2) whether mutuality of parties is a prerequisite to the assertion of defensive collateral estoppel by the defendant.
I. THE ADEQUACY OF THE PLANS AND SPECIFICATIONS WAS FULLY AND FAIRLY LITIGATED AND A DETERMINATION MADE ON THIS ISSUE IN THE PRIOR SUIT.
In Argentinis v. Gould, the trial referee, based on the testimony and evidence that was presented, found that the plans and specifications were not defective. The tryer noted that a contractor will not be responsible for loss or damage resulting from defective plans or specifications supplied by the contractee," Southern New England Contracting Company v. Connecticut, 165 Conn. 644, 656 (1974). Gould raised the issue of the adequacy of the plans and specifications of the architects, Value and Carpenter.
The ATR stated the following findings in his memorandum at pages 10, 11 and 12: CT Page 7816
 Plaintiffs sustained their burden by demonstrating through credible testimony and evidence that their architect, Mr. Valus, drew plans and specifications that were structurally sufficient. Mr. Lawrence Michaels' testimony buttressed that of Mr. Valus. The dwelling's deficiencies were not attributable to the plans and specifications. The structure was replete with instances of "poor workmanship" by the defendant.
 It is found that the defendant failed to offer compelling evidence to rebut or weaken the plaintiffs witnesses on this issue.
 On the trial, defendant offered the testimony of Anthony Mingolello, framer, and Richard Marnicki, structural engineer, to prove that the architect's plans and specifications were deficient. I cannot so find.
 [T]he defendant produced no credible evidence of the registration of his concerns of design deficiencies to the Plaintiffs, their architect or to town officials while he was in the process of building the house.
The appellate court affirmed the referee's findings and articulated the following:
 Gould asserts that Argentinis' house plans and specifications were not prepared by a licensed architect and that they were unsound and defective when delivered to him. A contractor is not responsible for damages resulting from defective plans or specifications supplied by a contractee. Southern New England Contracting Co. v. State, 165 Conn. 644, 656, 345 A.2d 550
(1974); D'Esopo Co. v. Bleiler, 13 Conn. App. 621, 624, 538 A.2d 719 (1988). This argument overlooks the fact that the referee weighed the testimony given by the parties' expert architects, and found that the plans supplied by Argentinis were structurally sufficient. The referee expressly found that the dwelling's deficiencies were not CT Page 7817 attributable to any fault in the plans, but rather to poor workmanship and materials. We will not encroach on the referee's broad discretion to try facts and to pass upon the credibility of witnesses. Ruwet-Sibley Equipment Corporation v. Stebbins, 15 Conn. App. 21, 25, 542 A.2d 1171, cert. dismissed, 209 Conn. 806, 548 A.2d 437 (1988); Essex Savings Bank v. Leeker, 2 Conn. App. 98, 102, 476 A.2d 1071 (1984).
Argentinis v. Gould, 23 Conn. App. 9, 16 (1990), rev'd. in part on another ground, 219 Conn. 151 (1991).
Gould's argument that the issue of defective plans was not litigated is unpersuasive. The following three conditions of collateral estoppel have, as stated in Hansted, supra, been satisfied.
1. This issue was fully and fairly litigated in Argentinis v. Gould, and it would be a waste of judicial time and resources to have the court redetermine this matter.
2. The trial referee determined that the plans and specifications submitted by the defendant architects were not defective and that the deficiencies in the structure were the result of Gould's "poor workmanship."
3. Given the state of the law that a contractor is not liable for damages resulting from defective plans, the decision as to the adequacy of the plans was necessary to the judgment.
II. MUTUALITY OF PARTIES IS NOT REQUIRED IN DEFENSIVE COLLATERAL ESTOPPEL
As noted above in Griffin, the trend has been towards abandoning the mutuality requirement in the application of collateral estoppel. Griffin, 22 Conn. App. at 615-16. In Gionfriddo v. Gartenhaus Cafe, 15 Conn. App. 392, 401-406
(1988), the appellate court addressed the issue of whether mutuality of parties was a requirement in the defensive use of collateral estoppel. The court noted that under the doctrine of mutuality, "neither party may use a prior judgment as an estoppel against the other unless both parties were bound by the judgment." Gionfriddo, 15 Conn. App. at 403. "Defensive use of collateral estoppel occurs when a defendant in a second action seeks to prevent a plaintiff from relitigating an issue that the plaintiff had previously litigated in another action against the same defendant or a different party." Id. at 404. CT Page 7818
The Gionfriddo court, at 405-406, traced the history and the reasons that the mutuality rule has been abrogated in other jurisdictions:
 The first major assault on the mutuality doctrine occurred in Bernhard v. Bank of America, 19 Cal.2d 807, 122 P.2d 892
(1942). Judge Traynor, writing for a unanimous court, stated: "The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted. The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided . . . . He is bound by that litigation only if he has been a party thereto or in privity with the party thereto. . . . There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.
 No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend." (Footnotes omitted.) Id., 811-12.
 Moreover, there are other good reasons for abrogating the mutuality rule. The United States Supreme Court, in recognizing that Bernhard has had a significant impact on many state and federal decisions especially where the prior judgment was invoked defensively, acknowledge the validity of Bernhard's criticism, and reasoned that it is no longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue. In any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the plaintiff has fully CT Page 7819 litigated and lost in a prior action, there is an arguable misallocation of resources. . . .Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or `a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure."' Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788
(1971), quoting Kerotest Mfg. Co. v. C-O-Two Co., 342 U.S. 180, 18S, 72 S.Ct. 219, 96 L.Ed.2d 200 (1952). (Emphasis supplied.)
The court then concluded that the mutuality requirement should be abandoned in cases involving defensive collateral estoppel.
The Connecticut Supreme Court granted certification, but affirmed Gionfriddo on the basis of the rule that a plaintiff may only be compensated once for the same injury. Gionfriddo v. Gardenhaus Cafe, 211 Conn. 67, 71 (1989). The court noted that because of its findings it "need not reach the issue of whether this jurisdiction continues to adhere to the doctrine of mutuality of estoppel or whether [the court] should approve of the use of defensive collateral estoppel in this or any case." Id.
This precise issue was reached by the Supreme Court in Aetna Casualty Surety v. Jones, 220 Conn. 285 (August 20, 1991). Referring to the Appellate Court cases of Griffin and Gionfriddo, supra, the court held at page 300:
 We agree with the Appellate Court and join those jurisdictions that have concluded that the mutuality of parties rule is unsound. To allow a party who has fully and fairly litigated an issue at a prior trial to avoid the force of a ruling against him simply because he later finds himself faced by a different opponent is inappropriate and unnecessary.[1]
Plaintiff is not entitled to another bite of the apple; therefore, the motion for summary judgment is granted.
E. EUGENE SPEAR, JUDGE. CT Page 7820