[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
One Howard Fowler, sometime in May of 1988 entered into a contract with the plaintiff, Eisele's Nursery Garden Center to provide landscaping services for property owned by Fowler's daughter and son-in-law, the defendants Diane F. Kirkegard and Christopher Kirkegard, in Monroe, New York.
Mr. Fowler was a general contractor and in the past had utilized the plaintiff for services on other premises evidently built by Mr. Fowler. In this particular case, the plaintiff performed the work and billed Mr. Fowler directly in accordance with the instructions given to him by Mr. Fowler.
At some point in time, Mr. Fowler made a partial payment of $6,000 and did not pay the remaining balance, which was approximately $10,800. In 1990, in December of that year, the plaintiff brought suit against Mr. Fowler in the Supreme Court of the State of New York, seeking a judgment for the balance owed by Mr. Fowler for goods sold and delivered which were the same goods and services alleged in this action. At some point in time, the matter was reduced to a judgment against Mr. Fowler and the court assumes that the judgment was never collected since the plaintiff is now pursuing an action against the parties here in the State of Connecticut. There was no indication as to why Fowler had not paid the balance of the contract due and owing to the plaintiff.
On or about May 25, 1993 the plaintiff commenced this particular action against the named defendants in the Judicial District of Litchfield. In its complaint, it is alleged that the contract was executed in New York and the plaintiff is seeking to recover on the grounds of contract, unjust CT Page 13457 enrichment and open account, based upon the services and plantings provided to the Kirkegards. On or about January 11, 1994 the court entered a summary judgment in favor of the defendants which judgment was ultimately reversed by the Appellate Court and the matter has now been set down for trial.
The defendants have set forth several special affirmative defenses to the matters complained of by the plaintiff in his complaint. Firstly, they allege that there was no contract between the Kirkegards and the plaintiff. Secondly, they allege both collateral estoppels and equitable estoppel against the plaintiff from proceeding against them.
At the time the services were provided to the Kirkegards, they had just had completed a new home for themselves in Monroe, New York, at a cost of approximately $230,000. Sometime subsequent to the providing of the services by the plaintiff, the defendants sold the property in New York and removed themselves to the State of Conn., wherein this action has now been brought against them. At the time of the sale of the premises, the parties received approximately $195,000 for the New York property, which amounts to a $35,000 loss, not including the cost of the landscaping. A lot of this was probably due to the fact that sometime between the time they built the house and the time they sold it, there had been a major decline in the real estate market in the whole Northeastern area of the United States and they suffered the consequences of having built at a time when prices were at their peak and selling at a time when prices had collapsed. Part of the problem, also, was that the Kirkegards felt that the landscaping services provided by the plaintiff were overly ambitious for the premises in the neighborhood in which they had built in New York State and resulted in a substantial amount of landscaping that had not been necessary and did nothing to enhance the value of the premises relative to the rest of the neighborhood.
The primary witnesses in this case were the plaintiff, Mr. Eisele, and the defendant, Diane Kirkegard. Mr. Kirkegard did not testify. One document upon which the plaintiff relied was the signed contract between Fowler and Eisele. Said document also contained the signature of Diane Kirkegard. The plaintiff alleges she signed the contract at about the same time that her father signed it and prior to the performance of CT Page 13458 the services. Mrs. Kirkegard's recollection was that, at the time the plaintiff showed up at her property to do the landscaping and install the shrubs and trees, she was asked to sign a document as a receipt for the merchandise being delivered. She has no recollection of ever having signed any other document relative to this matter.
Some time in December of 1990 the plaintiff instituted an action on the contract in the State of New York against Mr. Fowler and in that matter he received a judgment in his favor for $16,414.53, Fowler having paid $6,000 at or about the time of the contract. Since there is still an open amount due under the contract as found in the New York court, the plaintiff pursued this action against the present defendants.
The complaint was brought in four counts. The first count sounding in contract, the second being on the basis of an open account, the third count was on the basis of unjust enrichment and the fourth count was based upon a reasonable value of the contract. The defendants entered a general denial and three specific defenses. The first two defenses were based on collateral estoppel in that the matter had been adjudicated in the State of New York and that this would be a relitigation of the issue, the second special defense is on matter was res adjudicata preventing the relitigation of the claim. The third special defense was based on an equitable estoppel in that a previous judgment had been entered in the matter against another party.
The issue of this being a contract matter revolves around the fact that the contract did bear a signature of Diane Kirkegard, along with that of her father, Mr. Fowler. The dispute arises over when and why her signature showed up on the contract which was intended as a gift by Mr. Fowler to his daughter and son-in-law. There is no question that the defendants had stopped at some point in time at the nursery of the plaintiff in the State of New Jersey and had gone over the shrub selection with the plaintiff. The question becomes whether or not they were parties to the contract. The court had a problem in that both Mrs. Kirkegard, who testified, and Mr. Eisele, who testified, were both very credible witnesses and the court cannot say that one was more or less credible than the other. Mrs. Kirkegard claims that she never signed the contract until he day that the merchandise was delivered to the premises in Monroe, New York for installation by the CT Page 13459 plaintiff and his crew. At that point in time, she was presented with the document. As both parties were equally credible, this would mean that as far as the contract issue was concerned it was not proven by a fair preponderance of the evidence. Therefore the court would have to find that there was not sufficient proof that the defendant, Diane Kirkegard, was a party to the contract. Both parties gave a valid reason for her signature appearing on the document. Without sufficient proof, the court could not find Diane Kirkegard was a party thereto.
As a matter of fact, the State of New York found that as between the plaintiff and Mr. Fowler there was a contract, and did in fact render a judgment in favor of the plaintiff on the basis of the contract. As between Fowler and the plaintiff, there was a contract and the court will give faith and credit to the New York judgment finding that the document was a contract. However, the question presented to the court was not whether or not there was a contract but whether or not Diane Kirkegard was a party to the contract.
Nothing was introduced to indicate why the judgment had not been collected from Mr. Fowler — just that there remained a balance of $16,414.53, including interest, due to the plaintiff. The defendants' special defenses do raise some interesting claims and therefore should be addressed by the court.
The defendants raise the issue of estoppel in this case, both a collateral estoppel and a equitable estoppel. The defendants have also raised the question of whether or not there is a contract based upon the fact that there is not sufficient specificity to change the documents called a proposal into a contract. The court will not get involved in this latter since the New York court evidently found that there was a contract and we will give full faith and credit to this issue as between Eisele, the plaintiff, and Howard Fowler. The court will let the fact remain that the documents constitute a contract. The question is whether there was a contract between the plaintiff and the defendants. The court has already found under the evidence produced it was not a contract between the plaintiff and these defendants.
The defendants claim that mutuality between the parties is not a prerequisite to invoking the doctrine of collateral CT Page 13460 estoppel. They go on to say that one who is not a party to an original proceeding may later collaterally estop parties who were. See Aetna Casualty Surety Co. v. Jones, 220 Conn. 285
(1991).
The defendants have set forth a lengthy statement relative to the mutuality of parties rule which meant that though the parties were not actually adverse to one another in a prior proceeding, they could not assert collateral estoppel against one another in a subsequent action. That was the rule that was commonly accepted here in the United States. However, the doctrine is now widely abandoned. The abandonment of the rule, which would be of interest to the parties here in the State of Connecticut were opinions rendered by our own Appellate Court concerning the mutuality of parties rule. Griffin v. Parker, 22 Conn. App. 610,579 A.2d 532 (1990), (rev'd on other grounds, 219 Conn. 363,593 A.2d 124 (1991)); Gionfriddo v. Gartenhaus Cafe, 15 Conn. App. 392,546 A.2d 284 (1988), (aff'd on other grounds, 211 Conn. 67,557 A.2d 549 (1989)). What is of primary importance to us is that in both the GriffiN case and the Gionfriddo case, the mutuality rule was in effect abandoned by our own Appellate Court. This is in line with the current trend toward the abandonment of the mutuality standard. This means that even thought the defendants' might not have been parties to the original action in New York State, it becomes clear that they are in a position to properly invoke the doctrine of collateral estoppel as a bar to the present action. What the doctrine of collateral estoppel in effect does is to prevent a party from relitigating an issue that has already been determined in a prior suit. See Gionfriddo v. GartenhausCafe, supra.
The New York State judgment file and all supporting documents were entered into this case as an exhibit following a reversal of a prior summary judgment in favor of the defendants, because those documents had in fact been lacking in the former hearing. As a matter of fact, the complaint against Fowler asserted that the plaintiff was suing for goods sold and delivered by the plaintiff to Fowler based upon Mr. Fowler agreeing to pay the agreed upon amount as set forth in the annexed documents. The annexed documents included the proposal, the same one asserted in this particular case. The claim further asserted that Fowler was being sued for the reasonable value of the goods sold and delivered. The above CT Page 13461 referenced allegations state a claim for a breach of contract and further a claim for unjust enrichment which is identical to those raised in this action. Since those matter were fully and fairly litigated in the action in the State of New York wherein the only representation was that Fowler was responsible under the contract, this would mean that the plaintiff should now be barred from relitigating those particular issues.
Issue preclusion for collateral estoppel can be distinguished from a claim preclusion or res judicata. Issue preclusion is the doctrine that bars the relitigation of an issue of ultimate fact by the same parties upon a different cause of action. Under the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, would be an absolute bar to a subsequent action on the same claim. The judgment becomes final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. Morganti, Inc. v. Boehringer IngelheimPharmaceuticals, Inc., 20 Conn. App. 67, 71-72 (1989); seeSaporoso v. Aetna Life Casualty Co., 221 Conn. 356 (1992).
If we adopt these positions, and the court does so adopt them, that means that the plaintiff has previously litigated the exact same claim in New York state. Therefore, the prior judgment is final not only as to every matter which was offered to sustain the claim but also as to any other admissible matters which might have been offered for that purpose. The plaintiff had a full and fair opportunity to litigate its claim in New York and therefore should be barred from litigating the same claim in Conn.
Further, the plaintiff through his attorney certified to the New York court that: "The matter in controversy is not now the subject of any other action or arbitration proceeding now or contemplated and that no other party should be joined in this action". This is a representation to the court in the State of New York that there were no other parties to be joined and no other actions to be initiated. These statements made by a party or a party's attorney during judicial proceedings are judicial admissions. Kanopka v. Kanopka,113 Conn. 30, 38-39 (1931). Accordingly the plaintiff should be barred by the doctrine of equitable estoppel in prosecuting the present action. CT Page 13462
The defendants further raise an issue that at one point the defendants requested the plaintiff to admit that it had obtained a full and final judgment against Howard Fowler in an action based on the claim it is now pursuing against them. This was by way of a pleading dated December 1, 1993. The Practice Book requires that if an admission requested is not denied within thirty days, the party to whom the request is made has in effect admitted the requested admission. The defendants in this case ultimately did file a denial of the request but it was remote in time as the 30 days had passed well before the denial was filed.
The court finds that as a matter of law the plaintiff has not sustained its burden and finds for the defendants.
Kline, J., State Trial Referee